Isabel Morel De LETELIER, Michael Maggio, as personal representative of Orlando Letelier, Christian A. Letelier, Jose I. Letelier, Francisco J. Letelier, Juan Pablo Letelier, Michael Moffitt, individually, and as personal representative of Ronni Karpen Moffitt, Murray H. Karpen, and Hilda Karpen, Judgment Creditors,

v.

The REPUBLIC OF CHILE, also doing business as Linea Aerea Nacional-Chile, Judgment Debtor,

and

Linea Aerea Nacional-Chile, Garnishee-Respondent.

No. M18–302.

United States District Court, S.D. New York.

Dec. 21, 1983.

Tigar & Buffone, Washington, D.C. (Michael E. Tigar, John J. Privitera, Washington, D.C., of counsel), Donovan, Leisure, Newton & Irvine, New York City (William J.T. Brown, Joseph P. Cyr, New York City, of counsel), for Judgment Creditors.

Hale, Russell & Gray, New York City, for Judgment Debtor; Thomas F. Engel, New York City, Gerald D. Morgan, Jr., Washington, D.C., Carter K. Combe, Karen Gross, New York City, of counsel.

LASKER, District Judge.

On July 28, 1983 this Court filed an opinion reserving decision on the motion by the personal representatives and survivors of Orlando Letelier and Ronni Moffitt ("judg-

ment creditors"), pursuant to Fed.R.Civ.Pr. 69 and N.Y.C.P.L.R. § 5228, for the appointment of Michael Moffitt as receiver of the property interests of the Republic of Chile in the Chilean national airline, Linea Aerea Nacional-Chile ("LAN-Chile").[1] In that opinion it was held that on an appropriate factual showing the judgment creditors would be entitled to levy upon LAN's assets as Chile's to satisfy the judgment obtained against Chile on November 7, 1980 in the United States District Court for the District of Columbia.[2] The earlier opinion reviewed the record as developed up to that time, and observed that while judgment creditors had made a considerable showing in support of their motion, further development of the record was appropriate in a matter as significant as the one at hand. It was stated that

"It should be emphasized that if Chile failed to comply with the judgment creditors' relevant and reasonable discovery demands, and, in effect, defaulted on this second 'bite at the apple,' the judgment creditors would be entitled to invoke the ordinary rules of evidence and the sanctions provided in Fed.R.Civ.Pr. 37(b)."

567 F.Supp. at 1497.

On October 7, 1983 the judgment creditors served discovery requests, including interrogatories, document requests, and requests for admission, on the Republic of Chile.[3] The discovery requests covered the subject of, *inter alia*, the power and control exercised by the Republic of Chile over LAN-Chile assets and facilities, and the use (if any) which the Republic of Chile made of LAN-Chile in connection with the assassination of Orlando Letelier and Rónni Moffitt. The Republic of Chile has neither interposed objections to the discovery requests as permitted by the Federal Rules of Civil Procedure, nor complied with the discovery requests. Through diplomatic notes filed with this Court by the Department of State, the Republic of Chile has asserted that it does not recognize the validity of the default judgment entered against it in the District of Columbia, nor does it recognize the jurisdiction of this Court in the instant supplementary proceeding.

In view of the Republic of Chile's failure to respond to judgment creditors' discovery requests, the judgment creditors now renew their motion for the appointment of a receiver and other relief. The question for present determination is whether the record established thus far, together with the adverse inferences reasonably to be drawn from the Republic's failure to respond,[4] entitles the judgment creditors to the relief they request.

The decision on that question is influenced also by the fact that LAN-Chile has announced plans to restructure its operations significantly, possibly as early as January 1, 1984.[5] In view of this possibly imminent restructuring judgment creditors have sought an order requiring the posting of a bond by LAN-Chile pending a final determination on their motion for appointment of a receiver. However, since the record is now as complete as it is likely to be, there is no reason for further delay in reaching a final determination on judgment creditors' motion, rather than requiring the posting of a bond while that determination is pending.

The urgency of the situation, and the request for expeditious action which both the judgment creditors and LAN-Chile have urged upon the Court, preclude a detailed

---

1. 567 F.Supp. 1490 (S.D.N.Y.1983).

2. *See* 502 F.Supp. 259 (D.D.C.1980); 488 F.Supp. 665 (D.D.C.1980).

3. *See* Certificate of Mailing, signed by Raymond F. Burghardt, Clerk of the United States District Court, Southern District of New York, Exhibit F to December 2, 1983 Affidavit of Joseph Cyr, counsel to judgment creditors. ("Cyr Affidavit"). See also Cyr Affidavit, ¶ 10.

4. *See e.g., Trans World Airlines, Inc. v. Hughes,* 449 F.2d 51, 60–63 (2d Cir.1971), *rev'd on other grounds,* 409 U.S. 363, 93 S.Ct. 647, 34 L.Ed.2d 577, *reh'g denied,* 410 U.S. 975, 93 S.Ct. 1434, 35 L.Ed.2d 707 (1973).

5. *See* Transcript of Hearing, December 19, 1983.

recital of the facts of record. However, the Court has reviewed the record originally submitted on the motion for appointment of a receiver,[6] as well as the unanswered discovery requests propounded by judgment creditors to the Republic of Chile. We conclude that the record, and the adverse inferences to be drawn from the Republic's failure to respond, fully support the fact-findings set forth in the proposed order submitted by judgment creditors, both as to the control and power exercised over LAN-Chile's assets by the Republic of Chile, and the Republic's use of LAN-Chile in carrying out the assassination at issue in the underlying action.[7] Accordingly, judgment creditors are entitled to entry of an order appointing a receiver so that the judgment obtained against the Republic may be satisfied.

In recognition of the fact that the appointment of a receiver may be prejudicial to LAN-Chile's operations, it is appropriate to stay the order directing such appointment for a reasonable time to permit LAN-Chile to obtain a bond in lieu of submitting to receivership. We do not agree with LAN-Chile's argument that a bond for the full amount of the judgment with interest is not appropriate. LAN-Chile's own submissions, including the affidavit of Guillermo Goldberg, General Manager of LAN-Chile for North America, establish that restructuring of LAN-Chile's operations is being sought because of the airline's worsening financial situation. No assurance has been made to the Court that judgment creditors' ability to satisfy their judgment against the assets of LAN-Chile will not be prejudiced by the restructuring being contemplated.[8]

6. Copies of the submissions made in connection with the proceedings leading up to the July 28 decision have remained on file in chambers to date.

7. Contrary to LAN-Chile's argument, nothing in this Court's opinion of July 28, 1983 prevented judgment creditors from seeking discovery as to the Republic's control of LAN-Chile assets as well as its use of LAN-Chile in the assassinations.

LAN-Chile argues that no bond should be required in excess of its United States assets, which it asserts are less in value than the $2.9 million judgment. The argument is misplaced, however, because the purpose of the bond is not to secure a judgment against LAN-Chile,—indeed there is no judgment against LAN-Chile—but against the Republic of Chile.

Accordingly, judgment creditors' motions for sanctions pursuant to Rule 37 and for appointment of a receiver have been granted by order of this Court dated December 20, 1983.[9]

8. At best, Goldberg's Affidavit (dated December 7, 1983) states that "it is likely" that the restructuring would not call for the transfer of LAN-Chile's U.S. assets to any new entity created. ¶ 5.

9. The order was filed yesterday in advance of the filing of this memorandum, in order to permit LAN-Chile to proceed with an appeal.